No. 98.—LAWRENCE W. EARNEST, plaintiff in error, *vs.* THOS. T. NAPPIER and WIFE, defendants.

[1.] A witness is competent if his interest, if he has any, is against the party calling him, more especially if his evidence is only corroborative of that already given by the opposite party.

[2.] A mortgage debt should be credited with the value of property levied on by *fi. fa.* issued on the foreclosure of mortgage, if the levy is not explained or accounted for.

[3.] If the Jury render a verdict for a liquidated demand, they should give interest on it.

[4.] The verdict of a Jury must be contrary to evidence; or, to the mind of the Court, against the weight of evidence, before the Court will interfere with the legitimate province of the Jury.

Action on note, in Catoosa Superior Court. Tried before Judge TRIPPE, October Term, 1855.

This was an action against Nappier and wife, by Earnest, on the following note:

By the 25th Dec. next, we promise to pay L. W. Earnest or bearer, Six Hundred Dollars, for value received, this 2d July, 1849.          E. W. KILGROW,
                              CELIA PRICE.

Credited by $118 82, raised from sale of mortgaged property, April 5, 1850. Also, by $25 25, July 7, 1850. Both amounts paid by the Sheriff.

E. W. Kilgrow was a party to the action, but not served.

The plaintiff having introduced the note sued on, closed his case.

Defendants then introduced a mortgage on a quantity of personal property, made by Kilgrow and Mrs. Price, to secure said note, of even date therewith. This mortgage had been foreclosed and execution issued, on which were many

entries of levies, sales, &c. which, so far as they are material, will be noticed in the opinion of the Court. Defendant introduced evidence of an agreement between plaintiff and Mr. Nappier, to release the latter from all liability on this note for one hundred dollars; but there was some uncertainty in the testimony as to whether this agreement was before or after his marriage with Mrs. Price.

Plaintiff, in rebuttal, offered Dr. S. S. Bailey, to prove that a certain wagon and horses, included in said mortgage, levied on but not sold, were not the property of the mortgagers, but the property of the witness, who had bought them from Kilgrow before the mortgage. The witness was objected to as interested, and the objection was sustained and the witness excluded; and this decision is assigned as error.

The Court charged the Jury, that where the Sheriff had levied on property by virtue of the mortgage *fi. fa.* it was incumbent on the mortgagees to show the disposition of it, the possession of the Sheriff being their possession; that if the agreement between plaintiff and Nappier was made before Nappier's marriage, it was binding; if afterwards, it was void, as being without consideration.

The Jury found for the plaintiff One Hundred Dollars; whereupon, the plaintiff moved for a new trial, on the grounds—of error in the Court in the exclusion of the testimony of Bailey, and in the charge to the Jury, that the mortgagee is bound to account for property levied on by the mortgage *fi. fa.;* and on the further ground, that the verdict was contrary to law and evidence, and that the Jury failed to find interest on the one hundred dollars that they found for the plaintiff.

The Court refused the new trial, and this decision is alleged as error.

WALKER; MOORE, for plaintiff in error.

UNDERWOOD; SHROPSHIRE, for defendants.

*By the Court.*—McDONALD, J. delivering the opinion.

The plaintiff moved for a new trial, on six grounds stated in the motion. The Court refused the motion, and its decision is excepted to.

[1.] The first ground in the motion, is an alleged error of the Court in rejecting the evidence of Samuel S. Bailey. Before Bailey was tendered as a witness, the defendants had given in evidence an execution with the entries thereon, which had been issued on the foreclosure of a mortgage which had been read in evidence. On the execution there was a levy on a four horse road wagon, a bay horse and a sorrel horse; and immediately under it was the following entry: " The above levy was dismissed on the ground of a prior purchaser claiming the property as levied on," and signed by the plaintiff. The suit in this case is by the mortgagee against the mortgagors, for the recovery of the debt secured by the mortgage. The judgment, when rendered in this case, will have a lien on all the property of the defendants. In defence of the action, they may plead any payment which has been made to the plaintiff under process of law, on the foreclosure of the mortgage or otherwise. If, after the mortgage was given, the mortgagors sold any part of the mortgaged property, the mortgagee is not bound to pursue it, but may collect his debt from other property of the mortgagors. In this case, the evidence of the defendants showed that the levy on the road wagon and two horses was dismissed, because a prior purchaser had claimed them. It is not clear, from the entry, whether the purchase was prior to the mortgage or prior to the levy only. But that is not material, as there is no contest with sureties or third persons. The entry accounts for the levy, and shows that the property was not applied to the mortgage debt. That it was the entry of the plaintiff, does not vary the case. The defendants offered it in evidence. The witness, Bailey, whose evidence was offered, was the purchaser of the property, which had been re-

lieved from the levy. His evidence, if given as proposed, could not have increased the verdict against the defendants, and was only corroborative of the proof already made by them.

If he had any interest in the case, however, it was against the party calling him; for if his property was subject to the incumbrance of the mortgage, it was his interest to diminish the mortgage debt; whereas, the object with which he was offered, was to increase it. He ought to have been admitted.

[2.] The property seized on the mortgage *fi. fa.* was, *pro tanto*, a satisfaction of the debt secured by the mortgage; and if not accounted for, its value ought to be allowed as a credit in this case. The charge of the Court was, therefore, correct on that point.

[3.] The Jury ought to have given interest on the hundred dollars found by them. It is a liquidated demand, according to the settled meaning affixed to that term by this Court; and therefore, bears interest under the Statute. On that ground, the verdict of the Jury is contrary to law.

We are not prepared to say that the verdict of the Jury is contrary to evidence; or, strongly and decidedly against the weight of evidence.

Richard W. Jones, Esq. testified, that he had a conversation with the plaintiff and the defendant, Thomas T. Nappier, relative to the debt of the plaintiff against Kilgrow and Mrs. Price, now Mrs. Nappier. His impression is, that it was after the marriage, but he cannot say positively. He was consulted by Nappier, who wished to know if he was liable for the debt; and witness informed him that he was, or would be, not positive which. Plaintiff proposed to release him if he would pay one hundred dollars, giving as a reason that he could make his money out of the mortgaged property. Witness advised Nappier to do it, and thought, for reasons stated by him, that Nappier acceded to it, but is not positive. The plaintiff agreed, that if he got the money by the next sale day he would still release defendant. Plaintiff's proposition was to pay the hundred dollars then, as witness under-

Earnest *vs.* Nappier and Wife.

:stood it.    The conversation took place at the Union Hotel in .Dalton, and William A. Camp was keeping the hotel at the +time.    He has no very distinct recollection of the words used at the time; thinks it took place some days before the sale; cannot say how many days; it was in the fall of 1849.

Certificate of marriage of Nappier with Mrs. Price, was introduced and proved, that they were married on the 9th day of September, 1849.

William A. Camp testified, that he took possession of +the Union Hotel, at Dalton, on the 5th September, 1849; .that the defendants were married at his house and left imme- -diately.    He talked to Thomas T. Nappier about the debt of plaintiff, and advised him to arrange it, or have an under- standing about it, before he was married; that he saw plaintiff and defendant, and Col. R. W. Jones, in conversation at the hotel a day or two after he took possession of it, and is cer- tain it was before the marriage.    He did not hear what they said.    The defendant, Thomas T. Nappier, returned a week or two before the sale of the beds and furniture, and remain- ed until after the sale, and witness kept the hotel some time .after that.

[4.] The important question in regard to the evidence is, ·whether the agreement by Nappier to pay the hundred dol· ·lars, was antecedent or subsequent to his inter-marriage with Mrs. Price.

Jones testifies, that he had a conversation with the parties ¨in relation to that debt.    His impression is, it was after the ·marriage, but cannot say positively.    This conversation was at the Union Hotel.    Nappier wished to know if he was lia- ble for the debt; Jones told him that he was or *would be;* he is not positive which.    Here are two matters in reference to which Mr. Jones' mind doubts.    Whether the conversation ·was before or after the marriage, and whether he informed ·him that he *was* liable or *would be* liable.    If the marriage had then taken place, his information, undoubtedly, would have been, that he was liable; if it had not taken place, his advice would have been that he would be liable.    Take Mr.

Camp's evidence in connection with Mr. Jones', and there can be but little doubt on the subject. Jones had a conversation with the parties, and Nappier wished to know if he was liable for the debt. From the reply of Jones, he may have desired to know if he would be liable. Why was this conversation held?

Camp had called Nappier's attention expressly to this debt, and advised him to arrange or have an understanding about it before the marriage. It is probable, therefore, that Nappier sought the interview for that purpose; and the probability is strengthened by the inquiry made of Jones. Jones had the conversation at the Union Hotel. Camp saw the parties in conversation at the Union Hotel. Jones is of the impression that the conversation was *after* the marriage, but is not positive; Camp is certain that the conversation in which he saw the parties engaged, was *before* the marriage.

Camp kept the Union Hotel, and took possession of it on 5th Sept. 1849. The marriage took place on the 9th of the same month. It took place at the Union Hotel, and the parties left immediately after the marriage.

We cannot say that the verdict of the Jury was either contrary to evidence, or strongly and decidedly against the weight of evidence. We sustain the decision of the Court on the second, fifth and sixth grounds taken on the motion for a new trial, and reverse the judgment of the Court on the other grounds.