Chisolm *vs.* Chittenden & Company.

---

W. P. & F. N. Chisolm, plaintiffs in error, *vs.* S. B. Chittenden & Company, defendants in error.

1. A mortgage of a stock of goods, under section 1944 of Irwin's Code, cannot, by subsequent purchase and addition of new goods to such stock, be made to cover an amount greater in value than the original stock mortgaged.

2. A levy of a mortgage *fi. fa.* on personal property, more than sufficient in value to pay it off, is *prima facie* a satisfaction. The fact that a large portion of such property was applied by plaintiff and defendant in *fi. fa.*, by way of compromise of the claims of other creditors of defendant, will not affect the right of contesting creditors or claimant. to have the *fi. fa.* credited, so far as their rights are concerned, with the value of all the property levied on.

3. Such contesting creditors and claimants are entitled to have the *fi. fa.* credited with the value of the property at the time of levy. Subsequent depreciation, arising from unskillful handling of the goods (by parties other than the contesting creditors or claimants) while under the control of the 'sheriff or plaintiff, should not be deducted from the amount to be credited on the *fi. fa.*

4. Under the usual issue formed in a claim case, it is not competent for the plaintiff in *fi. fa.* to have an accounting between the claimant and the defendant in *fi. fa.*, and to have the verdict so moulded as to subject to his debt any amount which might be found in the hands of

the claimant, belonging to the defendant, even where such sum may have been paid by defendant to claimant, in part payment for an amount of goods (a part of which are the subject-matter of controversy), which had been sold by claimant to defendant, but which sale claimant had elected to rescind, because of false representations by defendant, at the time of sale; especially when the claimant on his election to rescind the contract, tendered the money received by him to defendant in *fi. fa.*, and which the latter refused. If the plaintiff desires to have such amount subjected to his execution, he must so frame his pleadings as to put the claimant upon notice.

5. False representations made by defendant in *fi. fa.* to claimant, in reference to his pecuniary condition, to induce the claimant to sell him the goods in controversy on credit, are admissible, on the trial of the claim case, to show the contract of sale void, on account of misrepresentation of a material fact.

6. Where claimants were deceived by such misrepresentation, and gave credit to the defendant in *fi. fa.*, on the faith of it, that vitiates the sale, if they elect so to do.

7. If the defendant in *fi. fa.* obtained possession of the goods, under such circumstances, and added them to a stock of goods already mortgaged, the lien of the mortgage will not attach to such goods to the exclusion of the claim of the seller, who elects to rescind the contract of sale, no new consideration having passed from the mortgagee to the mortgagor, at the time of such addition to the mortgaged stock.

8. When the question was whether goods belonged to defendant in *fi. fa.*, what he said when he bought them, is admissible to show fraud practiced by him, though plaintiff in *fi. fa.* was not present. (R.)

9. The verdict in this case is not contrary to law, evidence, or the weight of evidence.

Claim.    Fraudulent Purchase.    Evidence.    Mortgage. Before Judge HOPKINS.    Fulton Superior Court.    April Term, 1871.

On the 18th of September, 1868, E. H. Muse gave his promissory note to Willis P. Chisolm and Fortune N. Chisolm, for $12,146 50, due one day thereafter. And, to secure it, he mortgaged to them his " entire stock of dry goods, consisting of silks, satins, calicoes, ribbons, bombazines, poplins, muslins, hats, shoes, boots, bonnets and all other articles of merchandise, belonging to and embraced in

the stock of dry goods contained in the store-room" occupied by himself, on Whitehall Street, Atlanta, Georgia. This mortgage was recorded on the 26th of October, 1868, and foreclosed on the 7th of November, 1868, and, on the 9th of November, 1868, was levied upon the stock of goods *then* in the store. Chittenden & Company claimed certain of the goods levied upon, and replevied them, and others did the same as to other of said goods.

On the trial of Chittenden & Company's claim, counsel for the Chisolms introduced their note and mortgage, the proceedings of foreclosure, the *fi. fa.* and levy, proved by the levying officer that he levied upon the entire stock in said store, that they were in Muse's possession, and worth $18,000 or $19,000; that different claimants subsequently took out $7,675 18 worth of the goods, some of which were returned. Here they rested their cause. Chittenden & Company showed that, early in October, 1868, Muse purchased from them, in New York, the goods claimed by them, two-thirds on credit, for $899 18; that he obtained this credit by having represented to Chittenden & Company, that he then had, in Atlanta, a stock worth $7,000; that he had $2,000 in cash, and some other property, and owed but $700 or $800, which was balanced by debts due to him; and by representing, in person, besides, that his stock was worth $10,000, and his life was insured for $5,000, and that he had $25,000 in railroad stocks. And they testified that, but for relying upon said representations as true, they would not have sold Muse the said goods. The Chisolms objected to the statements of Muse as evidence against them. They put in evidence the receipts of the other claimants, given to the levying officer for goods claimed by *them*. They amounted to $3,683 84 in value. They proved how their goods were selected from the stock, and without damage to it. It was shown that subsequently other persons, who had sold goods to Muse, at the same time, claimed and replevied them, and that the Chisolms settled with some of them, and had the goods taken

by them returned to the stock. The Court refused to allow the witness to state how much the Chisolms paid in said settlements.

Muse, in rebuttal, denied making the statements aforesaid, but admitted that he did not tell them of the mortgage; he said his stock, when mortgaged, was worth $7,000; when levied on was worth $18,000; and, after the various claimants had pulled and hauled them about, only $5,000. Another witness testified to the damage done to the goods by careless handling, and gave evidence to show that Chittenden & Company could not indentify their goods. Indeed, Muse testified that they took some goods which he did not buy that season. W. P. Chisolm testified that he and F. N. Chisolm had, at various times, loaned Muse money at one and a half per cent. per month to help him along, and held his note therefor; but, because one of his commercial notes was protested, they took said note and mortgage for his aggregate indebtedness ; that they did not know that he was going to New York. He testified that, from the sale of the goods by the sheriff, they received $6,103 40 on their *fi. fa.* He proposed to testify to the amount paid out by them, in settlement with the other claimants, and the damage done to the goods not taken away, from careless handling; but the Court ruled this evidence out. A witness was introduced, and testified that Muse told him he had turned over to the Chisolms certain railroad stock, which Muse had denied having said. In rejoinder various persons testified that for years they had known Muse, and that his character had been above reproach.

The Court charged the jury, among other things immaterial here, as follows: If Muse bought the goods claimed from Chittenden & Company, in New York, and at the time of the purchase made statements to them, or one of them, in reference to his ability to pay for the goods which were false, and consequently deceived them, and if Chittenden & Com-

pany acted upon the faith of those statements, and gave credit to Muse, that would vitiate the sale.

If at the time the purchase was made, Muse was called upon by Chittenden & Company to give a statement of his financial condition, and he entered upon the statement and stated his condition in part, but witheld a material fact as to his pecuniary standing, in consequence of which Chittenden & Company were mislead, and he kuew it, that would vitiate the sale.

If the goods were purchased in the manner stated and upon the false statements and under the circumstances mentioned, and were shipped to Atlanta and placed in Muse's store, and at the time no money was advanced by the Cisholms on the faith of these goods, the goods are not liable to the mortgage *fi. fa.* The jury found for claimants.

The Chisolms moved for a new trial upon the grounds that the Court erred, 1st, in admitting Muse's statements in New York as evidence, (because the Chisolms were not present); 2d, in refusing to allow proof of the value of the goods by showing the amount for which the goods sold. 3d, in charging as above. 4th, in refusing to allow evidence of the amount paid out by the Chisolms in settling said other claims and of the *quantum* of damage done to the stock from careless handling, and because the verdict was contrary to evidence, etc. The Court refused a new trial, and error is assigned on said grounds.

L. J. GARTRELL; HENRY JACKSON & BROTHER, for plaintiff in error.

HILLYER & BROTHER for defendants. Fraud vitiates sale: 1 Paige's R., 491; 13 Wend. R., 570; 23d, 372; 1 Hill's R., 302; 21 Barb. R., 586; Kerr on F. and M., 331. The mortgage did not cover goods in excess of prime value: R. Code, sec. 1944. The *fi. fa.* was chargeable with value of goods levied on and not claimed by Chittenden & Com-

pany: 19 Ga. R., 537; 20th, 210; 6th, 392. If *fi. fa.* paid verdict right: 22 Ga. R., 348; 6th, 515; 7th, 380; 19th, 537; 20th, 210: 6th, 517.

MONTGOMERY, Judge.

The defendant in *fi. fa.*, Muse, mortgaged a stock of goods in Atlanta, worth $7,000 to plaintiffs in *fi. fa.*, in September, 1868. Shortley after, he went to New York, and by false representations as to his financial standing, (as the jury must have found to justify their verdict under the charge of the Court, though Muse swore he made no such statements,) induced the claimants to sell him some $900 worth of goods, for which he paid one-third cash. By this purchase from the claimants, and other purchases, the goods in the store which contained the mortgaged goods, were increased in value to about $18,000 The plaintiffs then foreclosed their mortgage on the stock of goods, and the sheriff levied on the whole stock found in the store.

Claimants put in a claim, identified the goods sold by them and replevied. Other claimants did the same as to other portions of the goods after claimants in this case had replevied theirs. The weight of the evidence is, that no damage was done to the goods by the claimants in this case overhauling them, in selecting the goods sold by them to defendant out of the lot; but much damage was done by the other claimants in their efforts to select their goods. When the claimants in the present case elected to rescind the contract of sale, they with others, represented by the same counsel, tendered through their counsel, to the defendant in *fi. fa.*, the amount of cash paid by him at the time of the purchase, which he refused. Plaintiffs in *fi. fa.* and defendant compromised with most or all of the other claimants, paying certain amounts to them and permitting them to take some of the goods.

No new consideration passed from plaintiffs in *fi. fa.* to defendant, at the time of the addition to his stock of goods.

Plaintiffs claim that the whole stock of goods levied on is subject to their mortgage. Plaintiffs also objected to the claimants giving in evidence the representations of defendant made to the latter in New York, for the purpose of obtaining credit.

1. We do not think the 1944th section of the Code warrants the interpretation sought to be given to it by plaintiffs in *fi. fa.* If so, it would open the door to unlimited fraud. A very small amount of goods might be mortgaged, and then an unlimited addition made to the stock, all of which would be covered by the mortgage, to the exclusion of the very creditors from whom the goods were bought.

2. The general rule is, that when personal property is levied on it is, *prima facie*, a satisfaction *pro tanto* of the execution. That plaintiff and defendant in *fi. fa.* compromised with certain creditors by permitting them to take some of the goods levied on cannot be permitted injuriously to affect the rights of contesting creditors, not parties to the compromise: 20 *Georgia Reports,* 210; 19 *Georgia Reports,* 589; 30' *Georgia Reports,* 433; Code, sections 3607–8–9.

Plaintiffs in *fi fa.* insist that they are at least entitled to have the property subjected to their claim to the extent of the cash paid by the defendant to the claimant at the time of the purchase. Had a bill been filed, or if, under our law, the claimants had been put upon notice by proper averments in the pleadings at law, this might possibly have been done. As the case stands, to set up such a claim now, especially where the amount in cash had been tendered back, on election by claimants to rescind, would operate as a surprise upon them. They might show, if duly notified, that such a claim would be made, that a proper disposition had been subsequently made of the fund received by them at the sale.

5. The alleged false representations of defendant as to his pecuniary standing were properly admitted. His title depended on the fact whether or not he made the false statements.

6. If he did make them, he got no title: Code, sections 3117, 2591, 2592.

7. If he got no title, he could convey none, where no consideration passed from the purchaser. It is said the consideration moved from the mortgagee at the time of the making of the mortgage; true, so as to cover all goods to which he might subsequently acquire title, added to his stock within the amount of the original value of the stock mortgaged, but certainly not to cover goods belonging to third parties, which might by some means become mixed with the mortgaged goods.

8. The sayings of the defendant at the time of the purchase were part of the *res gestæ* by which he acquired title, if he had any, and do not come within the principle laid down in *Dollner, Potter & Company vs. Williams*, 29 Georgia Reports, 743.

Judgment affirmed upon the grounds stated in the headnotes.