LAMAR *et al. v.* COLEMAN, RAY & COMPANY.

1. The official attestation of a domestic notary public to the execution of a deed or mortgage is not required to be under seal in order to prepare the instrument for going to record.
2. The description in a mortgage of an engine as "one horizontal-mounted six-horse power Farquhar engine" is sufficient, although the engine be one of five horse power, the mortgagor having at the time only the one engine.
3. Where a mortgage of personalty embraces various items of property, all of which are levied upon under the mortgage *fi. fa.*, the dismissal of the levy as to some of the property and its restoration to the mortgagor by the levying officer under instruction from the plaintiff's attorney, will not defeat the right of the mortgagee to sell the residue of the property, provided any sum would remain due on the mortgage debt after deducting the value of the property so released from the levy and returned to the mortgagor.
4. On the trial of an ordinary claim case, the issue is whether the property is subject or not subject, and no finding by the jury as to the amount due on the *fi. fa.* is requisite to a determination of the issue. There was no error in refusing a new trial.

February 13, 1892.                                   *Judgment affirmed.*

Mortgage. Attestation. Levy. Claim. Evidence. Before Judge JENKINS. Jones superior court. October adjourned term, 1889.

On February 13, 1888, H. J. Marshall made to Coleman, Ray & Co. a mortgage on three mules, and "one horizontal mounted six-horse power Farquhar engine," and "one two-horse Webster wagon," to secure his two obligations of the same date and due on October 15 and November 1, 1888, amounting to $498.25. This mortgage was "signed, sealed and delivered in the presence of J. H. Ray; J. J. Flanders, N. P., Bibb Co., Ga." It was recorded ten days after its date in Jones county, the county of Marshall's residence. On December 17, 1888, the deputy-sheriff of that county levied an execution issued from a judgment of April 18, 1888, in favor of Stewart *et al.* against H. J. Marshall *et al.*, on "one 5½

v 88-27

horse engine manufg. by A. B. Farquhar & Co., also one rubber belt and fixtures with said engine," as the property of H. J. Marshall.    On February 5, 1889, the sheriff of Jones county sold the engine levied on, at public outcry, and it was bid off by the attorney for Lamar *et al.*    On February 5, 1889, Coleman, Ray & Co. foreclosed their mortgage, and execution issued.    On the next day the same was credited by $225 proceeds of sale of two mules.    On March 15, it was levied by the sheriff on " one 6 horse power horizontal mounted engine and one 2 horse Webster wagon," as the property of H. J. Marshall; and Lamar *et al.* interposed their claim.    On the trial the following testimony was heard:

H. J. Marshall, for plaintiffs: There are Farquhar engines, and A. B. Farquhar & Co. engines.    This engine is in one sense a 5 horse power, and it is also a 6 horse power.    Power depends upon 3 things: number of revolutions, length of the stroke, and diameter of the cylinder.    The mare and mule were sold by me for $225; that was a fair price for them; and the money was credited on the *fi. fa.*, and levy as to them stricken.    The other mare in my possession now; she is worth $150.    I may have said I would not take $250 for her, but was only talking.    The wagon was worth at time of levy $10.    I have had some repairs on it, and it is worth $25.    I paid $50 on this debt in a bale of cotton.    It sold for about $50; perhaps $48 is the correct sum.    The mare and mule were levied on.    This is an A. B. Farquhar & Co. engine, made at York, Penn.    Has " agricultural works " on it.    I owned no other engine at time I mortgaged it to plaintiffs, and I bought it from A. B. Farquhar & Co., agents in Macon, as a six-horse power Farquhar engine.    Engines made by this firm are called Farquhar engine; the engine levied on was the only one I owned at the time.

S. B. Glawson, for claimants: Have an experience of 7

or 8 years with engines. Have engine in controversy in my possession; bought conditionally for $200. It is a 5 horse power; am sure of it. Didn't know for certain at last trial what power it was, but since then have examined it carefully, and am satisfied it is only a 5 horse power; was present and measured it with Barron; did so correctly by the rules in Farquhar's pamphlet; it proved to be a 5 horse power only. Made an arrangement with Mr. Hardeman to pay him $250 for it, and he said he would bid it off. Saw Judge Johnson before the sale under the Stewart *fi. fa.*, and asked him if there was any other claim on it; replied he heard there was, and for me to go to the court-house and examine; told him I would give him 200 for it, if he would buy it and guarantee good titles. Hardeman arranged to buy it in and sell it to me for $250, but this included engine and other fixtures. Knew of Marshall having 2 or 3 engines, but knew of no other at that time. It was in my possession on lower Brooks place at the time the mortgage execution was levied—of execution of mortgage. I am interested in the result of this case, as I paid my money out for it; though I consider myself safe and will not lose anything, as my money is to be paid back to me if I do not get the engine.

W. W. Barron, for claimants: Made the levy on mortgage *fi. fa.*, and entered it as a 6 horse because in mortgage so stated. Measured engine at request of Judge Johnson, and by the rules in Farquhar's pamphlet which I had at time; it was between a 5 and 6 horse power. I do not know of my own knowledge what power it is; measured it correctly by the book, and had a 2 foot rule with me; did not say on a former trial it was a 6 horse power engine; said I levied on it as such. I had the deputy-sheriff to make levy on Stewart *fi. fa.*; wrote the levy for him, and put it a $5\frac{1}{2}$ horse power because he said Marshall told him 'twas a $5\frac{1}{2}$

horse power. Don't know that he was sworn; swore him several times during that fall; he had given no bond as deputy-sheriff. Dismissed or struck levy on stock at direction of plaintiffs' attorney in mortgage *fi. fa.* Marshall took the other mare and wagon at direction of plaintiffs' attorney. Never sold anything but engine. Sold it as a 5½ horse power under the common law *fi. fa.*

Marshall testified that the engine described in the mortgage was in his possession at the time of execution of the mortgage, and was on the Brooks place at time of the levy; and that he and Glawson ginned cotton in the fall of 1888, witness getting part of the profits, and Glawson may have considered it in his possession, for that reason, when the mortgage *fi. fa.* was levied.

The jury found the property subject. The claimants moved for a new trial on the following besides the general grounds :

1. Error in admitting the mortgage over objection that it was attested by an officer not having a seal, Flanders being only a commercial notary public, and not witnessing it with his seal of office.

2. Description of the mortgaged property insufficient, and claimant not put on notice by the record.

3. Refusal to charge that "the mortgage cannot be enforced for any more than is justly due upon it." Claimants contend that the mortgage execution should have been credited by the amount paid by Marshall in the bale of cotton, and by the mare he testified to be worth $150, and by the wagon he testified to be worth $25, the mare and wagon being still in his possession.

The motion was overruled, and claimants excepted.

Richard Johnson and R. L. Berner, by Harrison & Peeples, for plaintiffs in error, cited 58 *Ga.* 383  55 *Ga.* 208; 54 *Ga.* 237, 462; 71 *Ga.* 497; 45 *Ga.* 213; 44 *Ga.* 656; 19 *Ga.* 537; 3 *Ga.* 460; 77 *Ga.* 365; Code,

§§1503, 1959, 1947, 1949, 3657; 81 Am. Dec. 510; 7 So. Rep. 324.

HARDEMAN DAVIS & TURNER and R. V. HARDEMAN, *contra*, cited 75 *Ga.* 662; 58 *Ga.* 383; Code, §§1503, 1967, 3829.