## SOUTHERN MINING COMPANY *v.* BROWN *et al.*

1 It is not the proper practice to move to dismiss a writ of error on the ground that evidence has not been briefed as required by law.   Where, however, there has been no bona fide effort to brief the evidence, this court will not pass upon any assignments of error requiring a consideration of the same. This rule will not be enforced in the present case, for the reason that an attempt seems to have been made in good faith to brief the same as required by law.

2. Where in a claim case it appears that the claimant is in possession of the property levied on, the burden of proof is on the plaintiff in execution to show either title or possession in the defendant in execution since the debt of the former became a lien on property of the latter.

3. In the trial of an ordinary claim case the only issue which can be properly determined is whether or not the property is subject; and hence it is that no question can be raised as to the liability of the claimant to pay the debt on which the execution was founded.

Submitted March 24,—Decided April 20, 1899.

Levy and claim.    Before Judge Fite.    Dade superior court. March 24, 1898.

*King & Anderson*, for plaintiff in error.
*Julius L. Brown*, contra.

COBB, J.   Two executions, issued in the name of the State for convict hire against the Dade Coal Company as principal and Joseph E. Brown and others as securities, were levied upon certain property of the estate of Joseph E. Brown, deceased.   Thereafter the executions were paid off by, and transferred to, Mrs. E. Brown as executrix, and Julius L. and Jos. M. Brown as executors, of the will of Joseph E. Brown, and were levied in their behalf upon the following property as the property of the Dade Coal Company: "369 mining cars, 1 hoist engine at what is known as Rattlesnake Mines, 2 pul-

someter pumps at the coal washer, 3 iron charging cars at the coke ovens, and 4 narrow-gauge locomotive engines;" the levy reciting that this property was in possession of the Southern Mining Company. To this levy the Southern Mining Company interposed a claim. Mrs. Brown, the executrix, having died, her death was suggested of record, and the case proceeded in the name of the executors, who at the trial assumed the burden of proof and introduced evidence which will be hereinafter referred to. The case was submitted to the judge without intervention of a jury, and he rendered a judgment finding the property subject to the executions. To this judgment the claimant excepted.

1. Upon the call of this case in this court a motion was made to dismiss the writ of error, on the ground that the evidence contained in the bill of exceptions had not been briefed as required by the act of 1889, embodied in Civil Code, § 5528. That such is the case does not authorize a dismissal of the writ of error. If there has been a failure to comply with this statute, it is proper for counsel for defendant in error to suggest that fact and insist that for this reason the evidence be not considered. In any case where an examination of the brief of evidence makes it clear that there has been no bona fide attempt to comply with the law, this court will not review the evidence but will simply affirm the judgment, unless there are questions made in the record which can be considered and determined without reference to the evidence. *Ryan* v. *Kingsbery*, 88 *Ga.* 361; *Ingram* v. *Clarke*, 96 *Ga.* 777; *Moss* v. *Birch*, 102 *Ga.* 556. An examination of the bill of exceptions in the present case shows that there has been a bona fide attempt to comply with the law, and the rule above referred to is therefore not applicable. While the bill of exceptions is voluminous, all of the evidence contained therein is necessary to a proper determination of the different questions made. This court will not apply this rule in any case where it is manifest that there has been an intelligent and bona fide effort to comply with the law in reference to such matters.

2. Under the view we take of the case, it is unnecessary to deal with many questions made in the present record. With-

out determining any question raised by the objections to the testimony which was admitted, but treating, for the purposes. of this decision, all of the evidence in the case as properly admitted, we are of opinion that the plaintiffs in execution failed to make out a prima facie case. They properly assumed the burden of proof, as possession of the property levied on was not in the defendant in .execution at the time of the levy. Civil Code, § 4624. And to properly carry this burden it was. necessary to show either title in the defendant in execution or possession in it since the date when the debt on which the executions were founded became a lien on its property. *Knowles* v. *Jordan*, 61 *Ga.* 300.

It appears from the evidence that in 1876 the Dade Coal Company entered into a contract with the State, by which a certain number of convicts were leased to the Dade Coal Company for a period of twenty years at a stipulated rental per annum. In 1889 the Dade Coal Company leased to the Georgia Mining, Manufacturing and Investment Company all of its. land, "including the Dade Coal Mines, and all the personal property, cars, engines, and all other kinds of personal property which it now possesses or to which it has claim of title." This lease was to expire June 1, 1909. There is no further description in the contract of the property owned by the Dade Coal Company. As a part of the consideration the lessee agreed to assume any sums which were or might become due by the lessor by reason of its contract of lease with the State. In 1895 a receiver was appointed for the Georgia Mining, Manufacturing and Investment Company, and he was ordered to take charge of all of the property and assets of this company, including its leasehold interests. From the report of the receiver it appears. that he did take charge of all of its property, and an inventory thereof is incorporated in the report. From the report it also appears that there was built, since the Georgia Mining, Manufacturing and Investment Company leased the property of the Dade Coal Company, upon the land of the latter company "a coal washer and chute, which is a fixture." "There was also built a short railway to connect with the said washer and chute, . . which is also a fixture," and which is reported

as the property "of the divisionals." Exactly what is meant by this expression does not distinctly appear. From the inventory appeared the following. "Inventory of property of the Dade Coal Company, including the Castle Rock Coal Company of Georgia, the Georgia Mining, Mfg. & Investment Company, lessee:" "369 mining cars, $428; 1 hoisting engine at Rattlesnake, $2,000; 2 pulsometer pumps (at coal washer), $1,000; 3 chge. cars at coke ovens, $600; 4 locomotives (narrow gauge R. R.), $5,950." In another report of the receiver the same items as those quoted appear; and the following statement is also made: The Georgia Min., Mfg. & Inv. Co. purchased one narrow-gauge railway locomotive, "but inasmuch as some of the locomotives leased by the Dade Coal Company . . have been used until they are worthless, this locomotive may be necessary to make good the number of engines leased by the Dade Coal Company." There is no further description in these reports of any property owned by the Dade Coal Company. The receiver was directed by the court to sell in parcels all of the property of the company of which he was receiver. Among the property contained in "parcel number 5" was the leaseholds upon the Dade Coal Company, the Castle Rock Company, the Walker Iron and Coal Company, the Bartow Iron and Manganese Company, and the Georgia Iron and Coal Company. Parcel number 5 was sold and came into the possession of the Southern Mining Company, the claimant in this case.

We have set forth above all of the evidence in the record which bears in any way upon the question of the ownership of the property levied on under the executions issued against the Dade Coal Company. In our opinion it is insufficient to make out a prima facie case for the plaintiffs in execution. It does not establish either that the property levied on was the property of the Dade Coal Company or that it has ever been in the possession of that company. The inventory of the receiver shows that the Dade Coal Company and the Castle Rock Coal Company owned property identical in character with that levied on; but it does not appear what each company owned, nor is there any evidence of a partnership between them. It would not necessarily

follow, however, that the property levied on is the same as that described in the inventory. But even if it be treated as belonging to one or the other of these companies, there is absolutely no evidence that the Dade Coal Company ever had title to, or possession of, the 369 mining-cars. There is no evidence to show whether Rattlesnake mines are on the property of the Dade Coal Company or the Castle Rock Coal Company, and hence there is no proof as to which company owned or possessed the hoisting-engine located at those mines. Two pulsometer pumps "at the coal washer" were levied on. It does appear from the receiver's report that there was a coal-washer located on the property of the Dade Coal Company, but it does not follow that the washer where the pumps levied on were located belonged to that company, or that the two pumps were the identical pumps described in the inventory of the receiver. But conceding that both of these things are true, this would not make out a case of possession on the part of the defendant in execution in its own right, unless it appeared that the pumps were fixtures and consequently belonged to the Dade Coal Company no matter by whom placed on its property. The record is silent as to this matter. As to the three charging-cars levied on, there is no evidence whatever even tending to show by whom they were owned or who was in possession of them. They were located at "the coke ovens," but there is nothing to show to whom the coke-ovens belonged or where they were situated. Indeed the receiver's report refers to certain "chge." cars belonging to either the Dade Coal Company or the Castle Rock Coal Company, but there is nothing to indicate even that the cars levied on were of the same character as those described in the report.

The receiver reported that there was built a short railway to connect with the coal-washer on the property of the Dade Coal Company. It does not appear how much of this road is on its land, and it is reported as the property "of the divisionals." This is manifestly insufficient to show either title to or possession of the railway in the Dade Coal Company. So that even if it be conceded that the four locomotives levied on were operated on this line of railway, it would not create a presumption

of either title or possession of the locomotives in that company. But there is no evidence that this is so, nor is there a scintilla. of evidence as to whether the Castle Rock Coal Company or the Dade Coal Company owned or possessed the particular locomotives levied on. We think it will appear from what has been said that the plaintiffs in execution have not shown enough as to a single item of the property levied on to cast the burden upon the claimant, and hence the court erred in holding that the property was subject to the executions.

3. It appears from the contract between the Dade Coal Company and the Georgia Mining, Manufacturing and Investment Company, that the latter covenanted to furnish such money as might be necessary to pay the State the rental for convicts due by the Dade Coal Company. It is contended that as the Southern Mining Company came into possession of the unexpired lease of the Georgia Mining, Manufacturing and Investment Company from the Dade Coal Company, and that as at the time of the purchase of this leasehold interest by the Southern Mining Company the debts on which the executions were founded were outstanding and unpaid, it should be held liable in the present action for the amount due on the executions, irrespective of whether or not the property levied on is subject. We are clear that no such question can properly be raised and determined in this case. This was an ordinary claim case, and the issue was whether the property levied on was subject or not subject. *Lamar* v. *Coleman*, 88 *Ga.* 417. The claimant in such a case is not called upon to do anything but show title in himself, and the question whether or not he is liable to pay the debt on which the executions are founded is not properly triable in such a case. The claimant may file equitable pleas and set up reasons why in equity the property levied on is not subject. *Castellaw* v. *Guilmartin*, 58 *Ga.* 305. But, in the language of Chief Justice Bleckley in *Bryan* v. *Simpson*, 92 *Ga.* 307, "It has never been heard of that by interposing a claim to property levied upon under an execution the claimant renders himself liable to pay the execution. The question which he proposes to litigate with the plaintiff is not his own liability for the debt, but his title to the property levied on.

He asserts that that property is not subject to sale under the execution." See also *Hardman* v. *Cooper*, ante, 251.

As to whether or not under the facts appearing in the record the claimant in this case would be liable in a proper proceeding to pay the money which the defendants in error paid the State on these executions we do not now decide.

*Judgment reversed. All the Justices concurring.*