VALLEY NATIONAL BANK v. DES MOINES NATIONAL BANK, Appellant, ISRAEL BROS. *et al.,* Defendants.

**Marshalling Assets:** SUCCESSION MORTGAGES: *Release of execution levy.* A creditor, having a mortgage on real estate, levied execution on the personal property of the debtor in a suit to recover the same debt, when another creditor, having a chattel mortgage subsequent to the levy, procured an assignment of the judgment and real estate mortgage of the first creditor, and released the levy, though a third creditor had procured a second mortgage on the land. *Held,* that the mortgage to the third creditor became the prior lien on the land, the creditor taking the assignment having no right to release the execution levy and hold the personal property under its chattel mortgage, and make its assigned claim out of the real estate under the assigned mortgage.

*Appeal from Polk District Court.*—HON. C. A. BISHOP, Judge.

WEDNESDAY, MAY 14, 1902.

THIS case is in equity, and presents a contest between the two banks as to priority of liens. The matter was submitted in the trial court upon an agreed statement of facts, which is as follows: "(1) That upon the 20th day of August, 1897, Israel Bros. were indebted to the Valley National Bank in about the sum of $20,000, and to the Clinton Woolen Manufacturing Co. in about the sum of $2,100, and to the Des Moines National Bank in about the sum of $2,500. (2) That about that time, to secure the claim of the Clinton Woolen Manufacturing Co., Israel Bros. deeded to N. E. Coffin, trustee, northwest ¼ of section 20, township 11, range 13, in Russell county, Kansas. (3) That upon the 29th day of October, 1897, the Clinton Woolen Manufacturing Co. reduced their claim to judgment in the Polk county district court, acting by its attorney, N. E. Coffin, who held the deed to the Kansas land in trust, and on the same day caused an execution to issue on such judgment, and delivered the same to the sheriff of Polk county, and caused the sheriff to levy said execution upon the personal property of Israel Bros., amounting, in the aggregate, to more than $10,000, over and above all incumbrances, by landlord's lien or otherwise. (4) That the indebtedness covered by said judgment of the Clinton Woolen Manufacturing Co. was the identical indebtedness for which the trust deed had been given to N. E. Coffin, trustee. (5) That upon the receipt of the execution in that case the sheriff took possession of the personal property of Israel Bros. in an amount more than sufficient to satisfy said execution and costs. (6) That on the same day the Valley National Bank took its chattel mortgage, which is foreclosed in this action, to secure its indebtedness of about $20,000 upon the identical property theretofore levied upon by the sheriff under the execution of the Clinton Woolen Manufacturing Co., which said property was then in the possession of the sheriff under said execution. (7) On the same day, and after the Valley National Bank took its mortgage upon said property then in the hands of the sheriff,

the Des Moines National Bank took its chattel mortgage upon the same property to secure its indebtedness of about $2,500. (8) That on the same day, and after the levy of the execution by the sheriff upon the personal property of Israel Bros. and while the same was in the possession of the sheriff, and which said property was in his hands to satisfy the judgment of the Clinton Woolen Manufacturing Co., the Des Moines National Bank procured from Israel Bros. a deed of conveyance to G. M. Reynolds, as trustee of the Kansas land described in the second paragraph of this stipulation, to secure the Des Moines National Bank upon the indebtedness of Israel Bros. to said bank. (9) That the land was conveyed to Reynolds, in trust, to secure the claim of the Des Moines National Bank against Israel Bros., which said claim of the Des Moines National Bank was on the same day, to wit, the 29th day of October, 1897, reduced to judgment in the Polk county district court in the sum of $2,286.88, with interest at 8 per cent. from that date, together with costs in the sum of $2.75. (10) That on the indebtedness of Israel Bros. to the Des Moines National Bank, represented by said judgment, there was thereafter paid, out of other securities to the Des Moines National Bank, $264 on the 21st day of July, 1899, and $1,157.68 on the 25th day of October, 1899, and there is due and unpaid thereon at the date of this hearing the sum of $1,302.75, with interest at 8 per cent. from this date. (11) That Israel Bros. are insolvent, and the Des Moines National Bank has no other security out of which their claim can be made than the real estate conveyed to said G. M. Reynolds in trust to secure said claim. (12) That on the 5th day of November, 1897, a receiver was appointed in this action to take possession of said stock of goods and preserve the same for the use and benefit of the parties entitled thereto, which order is referred to and made a part of this record. (13) That the receiver thereupon took possession of the personal property then in the hands of the

sheriff under the execution in the case of the Clinton Woolen Manufacturing Co. against Israel Bros., and said property was converted into money, and $14,923.80 over and above the expense of receivership was realized by said receiver from the sale of said property, and that the receiver now has in his hands said fund for distribution under the order of court. (14) That the Valley National Bank purchased the judgment in favor of the Clinton Woolen Manufacturing Co. against Israel Bros., and took an assignment thereof on or about the 15th day of November, 1897, and procured a quitclaim deed from N. E. Coffin, trustee, to R. A. Crawford, trustee, which assignment and deed were as set out in the amendment to petition filed in this case on the 27th day of November, 1897. (15) That the northwest quarter of section 20, township 11, range 13 west, in Russell county, Kansas, being the land in controversy, is of the reasonable cash value of $2,000. (16) That Israel Bros. have no property out of which any of the claims herein involved can be made, except the fund in the hands of the receiver and the Kansas land. (17) That the deed made by Israel Bros. to G. M. Reynolds, trustee, is as set out in the amendment to the answer of the Des Moines National Bank as Exhibit A, filed in this court on the 11th day of June, 1900. (18) That G. M. Reynolds, trustee, gave a quitclaim deed to the Des Moines National Bank, after he severed his connection with the Des Moines National Bank, which said deed is as follows: [Here follows an ordinary quitclaim deed from G. M. Reynolds conveying the land in question to the Des Moines National Bank.] (19) That the amount of the execution against Israel Bros. in favor of the Clinton Woolen Manufacturing Co., under which said sheriff took possession of the personal property aforesaid was $2,139.63, with interest at 6 per cent. from the 29th day of October, 1897, and costs in the sum of $6.85. (20) The receiver, after paying all expenses of receivership, has in his hands for distribution the sum of $14,923.80. (21) The Kansas land heretofore mentioned

in this stipulation was the property of Israel Bros., although the title rested in W. C. Israel, who was one of the firm of Israel Bros." The Valley National Bank sought to abandon the levy on the stock of goods made by its assignor, the Clinton Woolen Manufacturing Company, and enforce payment of the claim obtained from the latter out of the Kansas land. The trial court gave plaintiff bank a first lien on the real estate mentioned, and the Des Moines National Bank appeals.—*Modified* and *affirmed*.

*Chas. L. Powell* for appellant.

*Woodin, Nichols & Ayers* and *Cummins, Hewitt & Wright* for appellee.

W ATERMAN, J.—A brief analysis of the facts will disclose the following situation: "The Clinton Woolen Manufacturing Company held a paramount lien, through levy of execution, on the stock of goods, worth $14,923.80, and a first lien by mortgage on the Kansas land. Subject to the lien of the levy, the Valley National Bank had a mortgage on the goods, which was the second lien thereon. The Des Moines National Bank held a mortgage on the stock of goods, which was the third lien, and a second mortgage on the Kansas land. The goods were not of sufficient value to satisfy the two first liens. With matters in this condition, a receiver was appointed, and the court undertook a general adjustment of interests. For the purpose of protecting or aiding the security of its mortgage, the Valley National Bank purchased the judgment of the Clinton Woolen Manufacturing Company, including, of course, its lien by levy, and also its mortgage on the Kansas land, and the decree in the case, in effect, gives said bank the right to resort to the Kansas land for satisfaction of the judgment so purchased; thus abandoning the levy on the personalty, and leaving the stock

of goods free to be applied in payment of such bank's original claim, which was the second lien thereon. It is this shifting process which is objected to by defendant bank. It claims the levy of the execution of the goods by the Clinton Woolen Manufacturing Company satisfied the latter's lien. The soundness of this contention is the question we are to determine.

I. The levy of an execution upon personal property does not always operate to satisfy a judgment. Sometimes, however, it does, and the rule, as it is usually stated, is that such a levy is a satisfaction *sub modo*. It is held to amount to satisfaction when to abandon it would work an injury to the execution debtor or any subsequent lienholders. We do not understand this proposition to be in serious dispute between counsel. The cases from this court, while not expressing the rule in the terms we have adopted, support it in principle. *Sherraden v. Parker,* 24 Iowa, 28; *Bowen v. Thresher Co.,* 109 Iowa, 255, and cases therein cited. The cases from other courts give it unqualified support. *Newson v. McLendon,* 6 Ga. 392: *Chisholm v. Chittenden,* 45 Ga. 213; *Bank v. Rogers,* 13 Minn. 407 (Gil. 376), (97 Am. Dec. 239); *Harris v. Evans,* 81 Ill. 419; *Green v. Burke,* 23 Wend. 490.

We have now to examine and determine whether the abandonment of the levy on the stock of goods will cause injury to the defendant bank. It is not within reach of any returns under its levy on the stock, and can look only to the Kansas land for satisfaction of its claim. If what is attempted here by plaintiff bank can be successfully accomplished, defendant bank will get nothing. It will hardly be contended that if the Clinton Company still owned the judgment it could abandon the levy on the goods, which are ample in amount to satisfy its claim, and proceed against the land, to defendant bank's prejudice. We cannot see that its assignee is vested with greater rights in this respect. In *Barber v. Reynolds,* 44 Cal. 519, the point decided was

this: If a judgment is a first lien on real estate, mechanics' liens second, and other judgments third, in point of time, and an execution is levied under the senior judgment on personalty sufficient to satisfy it, and executions on the other judgments are levied thereafter on the same personalty, the proceeds of the sale under the first judgment cannot, by consent, be applied on the junior judgments, without giving the mechanics' liens a first place against the real estate. As to them, the senior judgment will be deemed satisfied. Other cases quite in point, and holding in accord with the California case, are *Woods v. Torrey,* 6 Wend. 564; *Hunt v. Breading,* 12 Serg. & R. 37 (14 Am. Dec. 665). If the Valley Bank had received the money on its claim purchased from the Clinton Company, under the levy on the stock, it certainly could not return it and then proceed against the land, to the prejudice of the defendant bank; and yet in practical effect that is what it is attempting to uphold. The case last cited is an authority directly on this proposition. Another feature of the case presents the equities of the Des Moines National Bank in even stronger light. It obtained the mortgage on the Kansas land after the levy of the Clinton Company's execution on the stock of goods. Presumably it relied on that levy to satisfy the Clinton Company's claim, and thus leave its own lien first on the land. It relied on a status created by the assignor of plaintiff bank in securing its rights, and we do not see why it may not insist that such status be not voluntarily altered to its prejudice. We think defendant bank was entitled to have its lien on the land declared paramount, and in not doing so the trial court erred. The decree in this respect should be changed.—MODIFIED and AFFIRMED.