562

DECIDED JULY 27, 1933. REHEARING DENIED SEPTEMBER 29, 1933.

*A. B. Conger,* for plaintiff in error.

*J. C. Hale, P. D. Rich,* contra.

JENKINS, P. J.   The bank sued Hartman on a series of notes, each containing an unconditional promise to pay and a clause accelerating the date of maturity of all the notes on default in the payment of any one.   The defendant filed a plea and answer and what he designates as a "cross-petition," setting up numerous grounds of defense, and asking a judgment in a large sum in excess of the plaintiff's claim.   The court sustained the plaintiff's demurrer, struck the defenses, and entered judgment for the plaintiff in the amount sued for.   A motion to dismiss the defendant's writ of error was made because there is no brief of evidence, and the bill of exceptions fails to account for its absence, and the certificate of the judge fails to certify that the bill of exceptions either contains or specifies all the evidence material to a clear understanding of the errors complained of, or to state that no evidence is necessary.

1.   Since it appears from the judgment and record that the judgment was entered after the defendant's pleadings were stricken, that there was no denial of the execution and delivery of the unconditional written promises to pay, and that the ruling on the demurrer to such pleadings raised and presents the sole questions in the case, which can be determined without any reference to evidence (if any was in fact introduced by the plaintiff), the motion to dismiss is denied.   *McGregor* v. *Third National Bank,* 124 *Ga.* 557 (2), 561 (53 S. E. 93); *Dierks* v. *Smith,* 119 *Ga.* 859 (47 S. E. 203); *Hathcock* v. *McGouirk,* 119 *Ga.* 973 (4) (47

S. E. 563). While in the case of *Head* v. *Marietta Guano Co.*, 124 *Ga.* 983 (3) (53 S. E. 676), relied on in support of the motion to dismiss, the court stated that the proper practice is "for the bill of exceptions to set out the evidence necessary to be brought up to this court, or to refer to it if there is a brief of evidence filed, or if no evidence was introduced, or the ruling excepted to was the dismissal or refusal to dismiss a case on demurrer, or was of like character, so that no evidence is necessary to an adjudication of it, to so state," yet in that case, where the questions raised were sufficiently shown and could be determined by the record, it was held that "the bill of exceptions will not be dismissed because it is not stated in terms that no other evidence was introduced or is necessary to be incorporated in the bill of exceptions, or other reference is made thereto." In that case, when an appeal from a justice's court came on for trial in the superior court, the judge allowed the appeal to be amended and denied a motion to dismiss, and the writ of error was taken from this judgment. It appears that the record failed to show either that any evidence was introduced or was not introduced in the trial; but the record merely showed the judgment, the motion to dismiss, the amendment of the appeal, and a statement by counsel for the appellant as to who was the real party appellant, which was in no wise evidence on the merits of the appeal. See also *Saint Amand* v. *Lehman*, 120 *Ga.* 253 (3), 257, 258 (47 S. E. 949); *Southern Mining Co.* v. *Brown*, 107 *Ga.* 264 (33 S. E. 73).

2. There was no merit in the defense to the effect that the defendant signed the notes with the understanding that his promise to pay was conditional only, the understanding being that the notes were for temporary purposes, and the "arrangement was to continue only" until a charter could be procured and a corporation organized, in which the defendant was to own all except nominal shares of the stock and to pledge such stock to the plaintiff bank when the corporation thus acquired the title to the properties for which the notes were given. This is true for the reason that, without undertaking to show that such undertaking was omitted from the notes by fraud, accident, or mistake, the defendant undertakes to vary by parol a written agreement so as to graft a condition upon the unconditional promises to pay, and this is not permissible. *Boynton* v. *Twitty*, 53 *Ga.* 214; *Dendy* v. *Gamble*,

59 *Ga.* 434, 436; *Byrd* v. *Marietta Fertilizer Co.,* 127 *Ga.* 30 (56 S. E. 86); *Hirsch* v. *Oliver,* 91 *Ga.* 554 (18 S. E. 354); and the recent case of *Phillips* v. *Phillips,* 46 *Ga. App.* 838 (2) (169 S. E. 537).

3. There was no merit in the plea by which the defendant sought to claim damages against the plaintiff for the alleged premature foreclosure of a bill of sale to secure the debt, which the plea states was given contemporaneously with the signing of the notes, in order to secure the same. Irrespective of any other reason, it appears that the first note was in default at the time of the foreclosure, and that, by virtue of the acceleration clause in each of the notes, the plaintiff had the right to treat all of them as being due and payable.

4. There was no merit in the mere defensive averment that the plaintiff in the previous foreclosure of the bill of sale to secure debt bid in the property for the net sum of $260, when it was of the approximate value of $19,000, and that it subsequently sold the property for $6,100.

5. Nor are there averments showing any valid defense in the plea that at the time of the execution of the security bill of sale, the "goods, merchandise, and property bought were of the approximate value of $6000, and that on the date of the foreclosure thereof said properties foreclosed and sold were of the inventory and approximate value of $19,000," and "that by defendant's efforts between the date of the purchase of said properties and the sale thereof by foreclosure aforesaid and the placing in said business of the approximate sum of $4900, the assets had been increased as aforesaid." Even if the rule stated in *Anderson* v. *Howard,* 49 *Ga.* 313 (2), is susceptible to the defendant's interpretation, there is nothing to indicate that the alleged excess value in the instant case represented properties described and covered by the bill of sale. On the contrary, the next succeeding paragraph of the answer distinctly avers that such was not the case. This being true, according to the averments, the alleged illegal levy upon the properties not covered by the lien could only amount to a tort, and could not constitute the basis of a recoupment such as claimed.

6. The defendant may set off or recoup a contractual obligation against a contractual obligation, or a liability arising out of

a tort against an action sounding in tort, but he can not, as a general rule, set up as a defense a liability arising under a contract against an action sounding in tort, or a liability in tort against a suit maintained on a contract. The exception to this rule is where equitable principles are involved. In such cases, where the court has equitable jurisdiction, the general rule does not obtain, and it is permissible to set up a defense founded either in tort or on contract in response to a suit of either nature. But where the court has not equitable jurisdiction, and the suit is filed, as in the instant case, in a city court, that court has jurisdiction of such a dissimilar and equitable plea only when it is purely defensive in its nature, and, if sustained, would result in a verdict finding generally in favor of the defendant. *Porter* v. *Davey Tree Expert Co.,* 34 *Ga. App.* 355, 357 (129 S. E. 557), and cit. The defendant's plea that in the previous foreclosure of the bill of sale to secure debt, the sheriff, at the instance of the plaintiff, seized and sold under quick order 21 automobiles and trucks not included in the instrument, and locked and barred the doors of the defendant's place of business, where his properties were stored, failed to show the breach of any express or implied contract, but sounds in tort, and is not limited to defensive purposes, and claims damages greatly in excess of the plaintiff's claim. For this reason, if no other, the court did not err in striking such defense.

7. Moreover, with reference to the grounds of defense setting forth alleged injury to the defendant by reason of the alleged illegal foreclosure of the bill of sale, the presumption is that the defendant had or could have had his day in court in the previous proceeding. See Civil Code (1910), §§ 3289, 3300 et seq., with reference to the right of a debtor to defend against any such illegal procedure by filing an affidavit of illegality. See also *Bank of Forsyth* v. *Gammage,* 109 *Ga.* 220, 223 (34 S. E. 307). If for any reason the facts were contrary to such presumption, the defendant, in claiming damages because of the plaintiff's illegal conduct, should have set forth, as a necessary averment, why such presumption did not in fact obtain. While the "cross-petition," as his plea is styled by the defendant, does say that the property was sold under the bill of sale by a "quick order," it does not in any wise indicate that he contested such procedure, or was unable

566

to give the bond which would have stopped the sale until all matters of defense were determined. Nor does the demurrer of the plaintiff to the defendant's cross-petition come too late, as is urged by the defendant, who cites section 5641 of the Civil Code (1910), and cases based thereon. This is true for the reason that under our practice "the petition and answer shall be sufficient to carry the cause to the jury, without any replication or other course of proceeding." Civil Code, § 5651. See also *Smith* v. *Hodges,* 8 *Ga. App.* 785 (2) (70 S. E. 195); *Parker* v. *Parrish,* 18 *Ga. App.* 258 (89 S. E. 381).

8. Paragraphs (i) and (j) of the plea and answer, however. do set forth a valid defense by allegations which, although subject to special grounds of attack, pointed out by the plaintiff in its brief but not embodied in its demurrer, are good as against the general demurrer, which is limited to merely general terms in its attack upon their sufficiency. In these defenses it is pleaded that the defendant went to the plaintiff with $1412 worth of reservation-of-title notes, which the plaintiff accepted, retained, and agreed to discount, agreeing to deposit the proper amount of principal and interest to the defendant's account as soon as the cashier could calculate the amount of interest due on the discounted notes; that the defendant then advised the plaintiff bank that he would send a certain check to General Motors Acceptance Corporation, as the financing agent of Chevrolet Motor Company, on the funds thus accruing to him on the discounted paper; that the plaintiff agreed that such check could be so sent, and that it would be protected by virtue of the paper discounted; but that, notwithstanding such agreement and in violation of its duty under the facts stated, the plaintiff refused payment of said check when presented; and that, while the plaintiff subsequently wrote a letter to the payee, advising it as to its error in not paying the check, because of an oversight by clerks or employees in the absence of the cashier at the time of its presentation, the dishonoring of said check, when the defendant "had or should have had under their agreement, funds in said bank" to pay the same, caused the Chevrolet Motor Company to cease doing business with the defendant and to cancel his franchise contract, which was one of his chief assets and without which his business and property would have been of little if any value. These averments

plead a set-off of a claim ex contractu, good as against the general demurrer. Section 16 of article 19 of the banking act of 1919 (Park's Code, § 2280(p); Michie's Code, § 2366(162)), while not in terms actually prohibiting the payment of overdrafts by officers and employees of banks, does penalize any officer or employee who without authority permits a customer to overdraw his account. Under the averments of the plea in the instant case, however, no question as to the validity of the cashier's agreement to pay the defendant's check arises, since the notes presented by the defendant for discount had been accepted, approved, and retained by the bank, which thus became the custodian of the defendant's funds, irrespective of whether or not the exact amount of interest had been calculated and entered. The entry on the books of the bank does not constitute its liability, but is mere evidence thereof.

9. For the reason set forth in the preceding paragraph, the court erred in striking the plea and answer as a whole and entering judgment for the plaintiff.

*Judgment reversed. Stephens and Sutton, JJ., concur.*

ON MOTIONS FOR REHEARING.

JENKINS, P. J. The motions for rehearing present no new facts, decisions, or matters, overlooked by the court in its previous full consideration of this case, and must be denied.

In the motion of the defendant in error for a rehearing, it is, however, suggested that paragraph 8 of the decision has not made clear the measure of damages to be applied in a retrial of the case under the petition and subparagraphs (i) and (j) of paragraph 10 of the answer, which the court has held "plead a set-off of a claim ex contractu, good as against the general demurrer." It is contended that it does not appear "whether the defendant in the trial court is entitled to set off against the cause of action of the plaintiff . . the value of the alleged $1412 worth of reservation-of-title notes," which the plaintiff is alleged to have agreed to discount, the proceeds to be placed to the defendant's credit, and to cash therefrom the defendant's check payable to the order of General Motors Acceptance Corporation as financing agent of Chevrolet Motor Company, but is alleged to have retained and refused to pay such check, or "whether the defendant in the trial court is entitled to set off against the cause of action of the plain-

tiff . . damages for the cancellation of his franchise contract with the Chevrolet Motor Company," resulting from the failure to pay the check. It is further insisted that the opinion should be clarified so as to state that "the measure of the set-off is limited to the value of the notes; otherwise, if the Chevrolet franchise had no value, [defendant] could not be permitted, under this decision, to recover or have credited to him the value of the notes;" and that if the court should hold that the value of the franchise is the proper measure of damages, it would amount to a holding that this defense sounds in tort rather than in contract.

Subparagraphs (i) and (j) alleged that "one of the chief assets of [the defendant's] business as a Chevrolet dealer was the franchise which he held with the Chevrolet Motor Company, and that the business and property, as a matter of fact, would have been of little, if any, value without said franchise;" that the franchise was lost by the acts and conduct of the plaintiff as alleged; that the $1412 worth of contract-notes was delivered as collateral to the plaintiff under the alleged agreement to discount, deposit the proceeds to the defendant's account, and pay the check in question; and that the plaintiff's failure to pay the check according to this "agreement" with the defendant "caused the Chevrolet Motor Company to cease doing business with him and to cancel his franchise contract," for which and other facts as set forth the defendant claims $10,000 damages, in subparagraph (1). The defense thus makes no claim of conversion of the collateral, and no claim of damages for its value. As far as the defendant has pleaded, the only damages he seeks to recover are the damages arising from the cancellation and loss of the franchise contract, so far as occasioned by the plaintiff's breach of the alleged agreement to discount the collateral and pay the check. In the measure of damages, the defendant will be limited to such claim as is made by subparagraphs (i), (j), and (1) of his answer.

*Rehearing denied. Stephens and Sutton, JJ., concur.*