## HATHCOCK *v.* McGOUIRK.

1. It was not error to refuse a continuance because of the absence of a non-resident witness; nor because of the illness of the respondent's brother, the court assuring the respondent that should he receive information that his brother's condition demanded his presence, the trial of the case would be suspended.

2. An application for leave to file a quo warranto, reciting that at an election for sheriff of a named county, held on a given day, the applicant received a majority of the votes cast, which fact was duly certified by the proper authorities; that, notwithstanding, his opponent was given a commission by the Governor of the State, under which he took possession of the office and was exercising the privileges and receiving the emoluments thereof, without lawful authority and in utter disregard of the rights of the applicant; and that the term of office for which applicant was elected has not expired, etc., is not demurrable on the ground that the application does not set forth a cause of action, or on the ground that the superior court of that county is without jurisdiction to entertain the same, or on the ground that the applicant's remedy was to have contested the election, and the commission issued by the Governor to the respondent is conclusive as to his right to hold the office. The motion to dismiss the proceeding and the motion to vacate the order directing the writ to issue embraced substantially the same matters set up by way of demurrer, and were properly overruled by the court.

3. The jury provided for in the Civil Code, § 4880, may be selected by drawing a panel of thirty-six jurors from the box, purging the panel and reducing it to twenty-four, and selecting the jury therefrom in the usual way, each party being allowed six peremptory challenges.

4. This court will not review the evidence in a case when it is apparent that there has been no bona fide effort to brief the evidence as required by law; nor will it undertake to pass upon assignments of error requiring a consideration of the evidence.

Argued April 5, — Decided May 11, 1904. Rehearing denied May 19, 1904.

Quo warranto. Before Judge Bartlett. Douglas superior court. January 25, 1904.

*J. S. James* and *B. G. Griggs,* for plaintiff in error.

*J. H. Hall, J. H. McLarty,* and *W. A. James,* contra.

Evans, J. C. W. McGouirk presented to the superior court of Douglas county an application for a writ of quo warranto to inquire into the right of M. L. Hathcock to the office of sheriff of that county, to which office the applicant claimed he had been duly elected on the first Wednesday in October, 1902. The court passed an order calling on Hathcock to show cause on the 11th day of April, 1903, why the writ should not issue, and service was perfected on Hathcock on April 6, 1903. On April 11, 1903,

he appeared and filed both a demurrer and an answer.    On the same day the applicant offered an amendment to his application, which was allowed over the defendant's objection.    The hearing was then postponed until May 4, 1903, when the case was taken up in connection with other cases of like character, in one of which (that of Harding *v.* Sayer) the court directed that an order be taken granting leave to file an information, "and also announced that similar judgment would be signed in this case."    The order in the case of Harding *v.* Sayer was accordingly prepared and signed, but no order in this case was signed until December 5, 1903, the court "anticipating the Sayer case would settle all the questions of law in this case," and nothing further was done until the day last named.    On that day a hearing was had on the defendant's demurrer and answer, and the court passed an order overruling the demurrer on all the grounds therein contained, and adjudging and directing that the applicant "have leave to file said information in the nature of the writ of quo warranto to inquire into the right and title of the said M. L. Hathcock to the office of sheriff of Douglas county for the term of two years from the 1st day of January, 1903."    The court further adjudged that a question of fact was made by the pleadings, and directed that a jury be drawn as provided by law for the trial of said issue of fact, and that the clerk of the superior court of Douglas county, upon the filing of the information, issue a writ of quo warranto, to be directed to the respondent, requiring him to appear at a special court to be held on the 21st day of December, 1903, and file his answer to said information and to try the issues of fact as provided by law.    The order of the court further directed that Hathcock be served with a copy of the writ of quo warranto and information ten days before the time set for the hearing.    On December 21, 1903, he appeared and filed a motion to vacate and set aside the order passed on December 5, and also filed a demurrer and answer to the information brought in pursuance of that order, as well as a motion to dismiss the proceeding.    The hearing was, by order of the court, continued until January 14, 1904, when the motion to vacate, the demurrer, and the motion to dismiss were heard and overruled.    On January 15, 1904, when the case was called for trial, the defendant moved for a continuance, which was refused, and the case then proceeded to a trial on its merits.    The jury

returned a verdict in favor of McGouirk.    The defendant, Hath-
cock, thereupon made a motion for a new trial, to which an
amendment was subsequently offered and allowed.    This motion
came on to be heard on January 25, 1904, and on that day the
court passed an order overruling the same.    On the last-named
day Hathcock presented his bill of exceptions, which was duly
signed by the judge, and therein assigned error on all the rulings
above referred to which were adverse to him.    The questions pre-
sented by his demurrers and the several motions made by him, in-
cluding the motion for a new trial, will appear from the discussion
of the case which follows, and it is needless to set forth at length
the various grounds of these demurrers and motions.    The issues
raised by the pleadings of the plaintiff and the answers of the de-
fendant will be likewise made to sufficiently appear.

1. Complaint is made by the plaintiff in error that the trial
judge improperly refused to grant a continuance because of the
absence of a witness.    It appears from the record that the absent
witness did not reside in the county, so there is no merit in this
complaint.    A continuance was also asked because of the illness
of the respondent's brother.    The court assured respondent that,
should he receive information that his brother's condition de-
manded his presence, he would suspend the case.    The court did
not abuse his discretion in refusing to grant a continuance on this
ground.

2. It was insisted by the defendant below that the application
for leave to file an information in the nature of a quo warranto
set forth facts disclosing that the court was without jurisdiction
in the premises, inasmuch as the action of the Governor in issuing
a commission to Hathcock was conclusive and could not be in-
quired into by the courts; that the statutory remedy of contest
was exclusive; and that the facts alleged were insufficient to au-
thorize the granting of the applicant's prayer that a writ of quo
warranto issue.    In brief, the application alleged that at an elec-
tion for the office of sheriff, held in the county of Douglas on the
first Wednesday in October, 1902, applicant received 862 votes,
and M. L. Hathcock received 755 votes; that after the election
the votes were consolidated by the managers thereof, in accord-
ance with the statutes made and provided in such cases, and it ap-
peared from the consolidated returns made by the managers who

held the election at the various voting precincts in the county that the applicant had received the votes of 862 legally qualified voters of the county, whereas the said Hathcock had received the votes of only 755 voters of the county; that, from the consolidated returns made by the managers of the election in the manner prescribed by law, applicant had a majority of 107 votes of the legal voters of said county, and was the duly elected sheriff of the county for a term of two years from the first day of January, 1903; but notwithstanding his opponent, Hathcock, failed to receive a majority of the votes cast at the election, he was, without legal warrant or authority, commissioned as sheriff of said county for a term of two years from the first day of January, 1903, and the said Hathcock now holds the commission issued to him and is in possession of the office of sheriff, discharging the duties thereof and enjoying all the emoluments, profits, and honors of that office, despite the fact that applicant was legally elected to said office in the manner provided for by the laws of this State and has a full and complete title thereto; that he has been illegally and wrongfully ejected from said office by the said Hathcock, who illegally and fraudulently obtained the commission thereto which authorizes him to discharge the duties of the same and to receive the profits, emoluments, and honors thereof; that the said Hathcock is usurping, by virtue of said commission, the said office, together with all of its privileges, honors, and profits; that said office is one of profit, and the term for which applicant was elected thereto has not yet expired; that he has a property right therein, and is being deprived of his property right in said office by the illegal acts and usurpations of the said Hathcock, as aforesaid.    Attached to this application was a copy of the consolidated returns of the election, showing the number of votes cast, respectively, for the applicant and his defeated opponent.    The application closed with a prayer that a rule nisi be directed to M. L. Hathcock, requiring him to show cause, at such time and place as the court might fix, why an information should not be filed against him, and the State's writ of quo warranto issue to determine what right and title he has to the office of sheriff, as aforesaid, and by what authority he is exercising the rights of said office.    In an amendment to his application, which was allowed, the applicant alleged that notwithstanding the fact that he received the majority of the votes of the law-

ful voters, cast at said election, and notwithstanding the returns of said election, regularly made as required by law by the duly constituted officers to hold the election, on their face showed that he had received a majority of the votes of the duly qualified voters which had been cast at said election, and notwithstanding a true copy of said returns had been, previously to the issuing of said commission to Hathcock, filed with the Governor of the State, the said Governor, contrary to law and in utter disregard of the rights of applicant, illegally and wrongfully issued to Hathcock the commission of sheriff of said county of Douglas.

Substantially the same objections raised by the demurrers were asserted in the motion to dismiss and the motion to vacate the order overruling the first demurrer.　Both the application for leave to file and the information distinctly allege that applicant received a majority of the legal votes cast in the election, and no hint from the pleadings of applicant would suggest the slightest color of authority for respondent to hold the office.　In all of the reported cases in this State the defeated candidate was attempting by quo warranto to either declare the office vacant, or sustain his right to the same because of certain alleged matters dehors the certificate of the consolidating board declaring the election of his opponent. The case at bar, on the pleadings of applicant, is that of a successful candidate receiving a majority of the votes cast in the election, his election legally declared by the board of consolidation and duly certified to the Governor, and the issuance of a commission to his defeated adversary by the Governor without authority of law and in utter disregard of his right to the office.　It needs no argument to sustain the contention that in such a case the appropriate remedy is by quo warranto proceedings.　Civil Code, § 4878; High's Ex. L. Rem. § 639 a.　The issuance by the Governor of a commission, since the act of 1893, providing that in contested election cases the issues shall be adjudicated by the judge of the superior court, is a ministerial act; his duty is to issue the commission to the person whose election is certified by the proper authorities, in cases where there is no contest; and where there has been a contest, to the person adjudged by the special tribunal to determine the result by contest proceedings as entitled to the commission. Even when the Governor was the official to pass on the issues made in a proceeding of contest, it was held that a commission

was not conclusive as to matters not passed upon by the Governor. *Corbitt* v. *McDaniel*, 77 *Ga.* 544. But where every right to the commission was in the applicant, and respondent was an usurper, according to the pleadings of applicant, it can not be said that the illegal issuance of the commission would deprive applicant from appealing to the court to prevent an usurpation of office. It may be that the Governor was fully justified in issuing the commission to Hathcock; but this could be urged as matter of defense. The demurrer admits all facts well pleaded, and the allegations of both the application and the information clearly show the election of McGouirk and the improper issuance of commission to Hathcock. It is only in cases where the election board, or the tribunal to try contest proceedings, certifies that a named person has received a majority of the votes cast at an election, and the Governor issues a commission on such certificate, that it has been held that a commission thus regularly issued is final.

Another objection urged in the demurrer was that the exclusive remedy of applicant was to have contested the election. It would seem absurd to say to a successful candidate for office, who has received a majority of the votes and who has been declared entitled to the office by the board of managers consolidating the election returns, that before he is entitled to the office he must file contest proceedings against his defeated adversary. The successful candidate is never the contestant; the certificate of the board of consolidation gives him a prima facie right to the office. But the defeated candidate may contest, and the result of such a proceeding is conclusive as to the person elected and entitled to the office. However, this is not the case raised in the pleadings by demurrer.

Where the purpose is to declare the office vacant, any citizen and taxpayer may file a proceeding in the nature of quo warranto. If the relator happens to be the defeated candidate, his right to file the information is in his capacity as an interested citizen, and not in his capacity of a defeated candidate. In the character of defeated candidate, he can claim no more than the right to have the opportunity to institute quo warranto proceedings against his opponent who was illegally installed in office, for the purpose of ousting him. *Howell* v. *Pate*, 119 *Ga.* 537, *Davis* v. *City Council,* 90 *Ga.* 824.

When a defeated candidate wishes to assert his claim that he received a majority of the legal votes cast at an election, he must avail himself of his statutory remedy of contest. His right to the office must appear from the judgment or order of the proper tribunal vested by law with the authority of going behind the return of the election managers and declaring the true result of the election to be that he had received a majority of the legal votes cast. Until the defeated candidate has in this way established his right to the office, he can not by quo warranto seek the ouster of his opponent and his own induction into office. From what has been said, we conclude that the court was right in overruling the various demurrers and motions.

3. When the judge determined that the answer to the information raised an issue of fact, he passed an order for a special term of court to try the same, and in this order directed that a jury be drawn as provided by law. Pursuant thereto, thirty-six jurors were drawn from the box, from which number a panel of twenty-four was made up, and the jury was selected from this panel in the usual way. Plaintiff in error contends that the judge did not have the authority to draw more than twelve names from the box, under the Civil Code, § 4880, and the drawing of a larger number denied him the right of a trial by the jury provided for by the statute. Prior to the act of 1868, which is codified in section 4880, the practice in mandamus, prohibition, and quo warranto was uniform, and all issues of fact were tried in term time. The act of 1868 made an exception of quo warranto, and provided for a more speedy trial at a special term of court, to be called not less than ten nor longer than thirty days after the judge had determined that the information and answer made an issue of fact. The evident purpose of the legislature was to provide a more speedy trial in this kind of cases, and the machinery devised was to effectuate such purpose. To some extent there was a variance from the general procedure, notably in the provision for trial at a special term and the abolition of all distinction between appearance and trial terms. *W. & A. R. R.* v. *State*, 69 *Ga.* 531. Except as otherwise provided, the general law of practice and procedure was applicable. It will be observed that no provision was made for supplying this panel to the number of twelve in case of its depletion from any cause, nor was either party given the right

of peremptory challenge.   The act of 1878, codified in the Penal Code, § 854, broadly gives to each litigant in every civil case the right to demand a full panel of twenty-four competent and impartial jurors from which to strike a jury.   While the section just cited says that each party may demand a full panel of twenty-four, the act from which the section is codified distinctly states that in all civil cases any party shall have the right to demand a full panel of twenty-four competent and impartial jurors from which to strike a jury.   This section is applicable to all civil cases, and embraces in its broad provisions the practice in the trial of quo warranto proceedings.   Therefore, construing these sections together, as well as all other kindred sections, we hold that the judge is not limited to the drawing of twelve men by the Civil Code, § 4880, but in his discretion may draw thirty-six, so as to allow the selection of a jury as in ordinary cases.   This construction gives effect to the wise policy of uniformity of procedure, accords to each party six peremptory challenges, and does not withdraw any right or privilege from the litigants.

4. None of the other assignments of error can be intelligently passed on without reference to the evidence adduced on the hearing below.   No bona fide effort to comply with the statute as to making a brief of the evidence appears to have been made in this case.   "This court will not review the evidence in a case when it is apparent that there has been no bona fide effort to brief the evidence as required by law, and when the document purporting to be a brief of the evidence is extensively interspersed with objections to testimony, statements and arguments of counsel, and evidence to which objections were sustained, and also with colloquies between counsel and court, none of which should properly find place in a brief of evidence."   *Culver* v. *Silver*, 113 *Ga.* 1142. Nor, in such a case as the present, can this court undertake to "pass upon assignments of error requiring a consideration of evidence."   *Carmichael* v. *State*, 111 *Ga.* 653.

*Judgment affirmed.   All the Justices concur.*