## S16A1257. GEORGIACARRY.ORG, INC. v. ALLEN et al.

(791 SE2d 800)

MELTON, Justice.

GeorgiaCarry.Org, Inc. ("Georgia Carry") is a nonprofit corporation with the stated purpose of "focus[ing] . . . on public interest matters of self-defense and gun laws of the State of Georgia and the United States of America." On October 29, 2015, Georgia Carry filed in Fulton County Superior Court an "Application for Leave to File an Information in the Nature of Quo Warranto," against members of the Code Revision Commission (the "Commission"),[1] in an effort to challenge the right of every individual Commission member to continue serving on the Commission. The superior court denied the application, finding that Georgia Carry lacked standing to pursue a writ of quo warranto, and Georgia Carry appeals from this ruling. As explained more fully below, because the trial court correctly concluded that Georgia Carry did not have individual standing or associational standing on behalf of its members to pursue a writ of quo warranto, we affirm.

"Quo warranto is an extraordinary remedy which exists solely by virtue of statute." (Citations and punctuation omited.) *Richardson v. Phillips*, 285 Ga. 385, 385 (677 SE2d 117) (2009). In this regard, OCGA § 9-6-60 provides:

> The writ of quo warranto may issue to inquire into the right of any person to any public office the duties of which he is in fact discharging. It may be granted only after the application by some person either claiming the office or interested therein.

---

[1] The Commission oversees various activities relating to updates and revisions to the Georgia Code (see generally OCGA § 28-9-3), and the General Assembly

> created the . . . Commission, to be composed of 15 members . . . . (1) The Speaker of the House of Representatives; (2) Four members of the House of Representatives to be appointed by the Speaker of the House of Representatives for terms of office coinciding with their terms as members of the House of Representatives; (3) The President of the Senate; (4) Four members of the Senate to be appointed by the President of the Senate for terms of office coinciding with their terms as members of the Senate; and (5) Five members of the State Bar of Georgia to be appointed by the president of the State Bar of Georgia for terms of office of one year each and until their successors are appointed[.] . . .

OCGA § 28-9-2.

> At the time that Georgia Carry filed this action, the members of the Commission were the Hon. John D. Allen, Hon. Albert J. Bolet III, Casey Cagle, Johnnie Caldwell, Joshua C. Bell, Stacey Evans, William Ligon, Josh McKoon, David Ralston, Jesse Stone, Curt Thompson, Tom Weldon, Wendell Willard, Robert K. Woo, Jr., and Rebecca Wright (collectively the "Commission members").

In order to determine whether Georgia Carry is authorized to pursue a writ of quo warranto under this statute, we must first determine the proper interpretation of OCGA § 9-6-60 by applying fundamental rules of statutory construction, which

> require us to construe [the] statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.

(Citations omitted.) *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003).

Bearing these principles in mind, we must determine whether Georgia Carry qualifies as a "person either claiming the office [of the Commission members] or interested therein" pursuant to OCGA § 9-6-60 such that it would be authorized to pursue a writ of quo warranto. As explained below, a straightforward reading of OCGA § 9-6-60 reveals that the legislature did not intend for a nonprofit corporation such as Georgia Carry to be considered a "person" for purposes of pursuing a writ of quo warranto.

By its plain terms, OCGA § 9-6-60 indicates that the type of "person" who may pursue a writ of quo warranto to challenge the right of a "person" to a public office must be someone who is capable of "claiming" the public office occupied by another person, or a "person" who is otherwise interested in the office in question even if that person is not making a direct claim to the office itself. The text itself suggests that, as only individual natural persons can hold or claim to hold a public office, only natural individual persons can be otherwise interested therein. See *White v. Miller*, 235 Ga. 192, 192-193 (219 SE2d 123) (1975) (interested citizen and taxpayer may institute quo warranto proceedings to inquire into right of another person to hold public office the duties of which he is discharging). Indeed, as this Court has long recognized,

> [w]here the purpose is to declare the [public] office vacant, any citizen and taxpayer may file a proceeding in the nature of quo warranto. If the relator happens to be the defeated candidate, his right to file the information is in his capacity as an interested citizen, and not in his capacity of a defeated candidate.

*Hathcock v. McGouirk*, 119 Ga. 973, 978 (47 SE 563) (1904). Here, the fact that Georgia Carry may claim to have an "interest" in the offices

held by the Commission members does not transform Georgia Carry into a "person" under OCGA § 9-6-60. We find no indication that the legislature intended for a nonprofit corporation such as Georgia Carry to be considered to be a "person" for purposes of pursing a writ of quo warranto. Indeed, although corporations may generally be considered to be "persons" under the law (see OCGA § 1-3-3 (14)), that is not the case where, as here, the legislature has shown its intent to exclude corporations from the types of "persons" who are authorized to pursue a writ of quo warranto. See OCGA § 1-3-2 ("As used in this Code or in any other law of this state, defined words shall have the meanings specified, unless the context in which the word or term is used clearly requires that a different meaning be used"). See also, e.g., *Ga. R. Bank & Trust Co. v. Liberty Nat. Bank & Trust Co.*, 180 Ga. 4, 12 (177 SE 803) (1934) ("A corporation is not impliedly within a statutory provision applicable to persons, if it is not within the purpose and intent of such provision, or if an attempt to exclude it otherwise appears") (citation omitted). Accordingly, under a plain reading of OCGA § 9-6-60, Georgia Carry would not be an authorized "person" to pursue a writ of quo warranto to challenge the rights of the Commission members to hold their public offices.

However, this does not end our inquiry. Although Georgia Carry is not authorized to pursue a writ of quo warranto as a "person" under OCGA § 9-6-60, this does not necessarily mean that Georgia Carry could not obtain standing as an association on behalf of its individual citizen and taxpayer members to pursue a writ of quo warranto.

> An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

(Citation and punctuation omitted). *Atlanta Taxicab Co. Owners Assn. v. City of Atlanta*, 281 Ga. 342, 344 (2) (638 SE2d 307) (2006).

Here, because there are citizen and taxpayer members of Georgia Carry who may qualify as persons under OCGA § 9-6-60, those individuals would have standing to pursue an action in quo warranto if they were "claiming" the challenged offices of the Commission members or were otherwise "interested" in those offices. See OCGA § 9-6-60. See also *White*, supra. Further, the claim asserted here based on an interest in the offices of the Commission members versus an actual claim to those offices would not require the participation of the

individual members of Georgia Carry in the lawsuit. Thus, two of the three requirements for associational standing can be met here.

However, Georgia Carry has made no showing in this case that the interests that it seeks to protect by pursuing a writ of quo warranto are germane to the organization's purpose. Indeed, in its Articles of Incorporation, Georgia Carry states that its purpose is to

> focus . . . on public interest matters of self-defense and gun laws of the State of Georgia and the United States of America. [Georgia Carry's] assets are be [sic] dedicated to 1) Educating members, citizens, government leaders, business owners, and law enforcement officers about Georgia's self-defense and gun laws; 2) Defending the civil rights secured through law by litigation; 3) Advocate [sic] for improvements in Georgia's self-defense and gun laws; and 4) Informing members about current issues and pending legislation related to self-defense and gun law.

The primary purpose of the Commission is "[t]o select and contract with a publisher to conduct a revision, codification, or recodification of the [Georgia] Code and laws of Georgia" (OCGA § 28-9-3 (1)), and to fulfill certain duties in connection with and in furtherance of that task. See generally OCGA § 28-9-3. See also *Harrison Co. v. Code Revision Comm.*, 244 Ga. 325 (1) (260 SE2d 30) (1979). The Commission has no stated purpose relating to changing the substantive content of any laws passed by the General Assembly, let alone specific laws relating to guns or self-defense.

In its effort to show that the interests that Georgia Carry seeks to protect by pursuing a writ of quo warranto against the Commission members are germane to the group's purpose, Georgia Carry relied in the trial court on the testimony of its Executive Director, Jerry Henry. Henry testified, without any specifics, that he believed that certain bills that had been passed, and in which Georgia Carry had been interested, had not been codified correctly. Henry further testified:

> Well, [Georgia Carry] work[s] hard to get bills passed and get them codified into the system. And if they're not codified properly into the system, then it's a very — I mean, it's going to affect us negatively, because it's like we never did anything to get it done. There are political pressures brought to bear on the [Commission] from time to time, and it affects what happens.

Neither the stated purpose of Georgia Carry in its Articles of Incorporation nor the testimony of its Executive Director reveals how the work of the Commission members in implementing Code updates has had any impact, let alone a negative one, on Georgia Carry's stated purpose of "focus[ing] . . . on public interest matters of self-defense and gun laws of the State of Georgia and the United States of America." Indeed, any connection between the Commission's work to publish revisions to the Georgia Code without regard to the substance of laws passed by the General Assembly and Georgia Carry's goals with respect to advocating for gun laws which it finds to be favorable to its members is not established by the record. Accordingly, we find that Georgia Carry has not satisfied the requirement that the interests that it seeks to protect are germane to the organization's purpose in any manner that would establish that it had associational standing to pursue a writ of quo warranto on behalf of its members. We therefore affirm the trial court's decision to deny Georgia Carry's request to pursue a writ of quo warranto here.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2016.

*John R. Monroe,* for appellant.

*Samuel S. Olens, Attorney General, Dennis R. Dunn, Deputy Attorney General, Russell D. Willard, Senior Assistant Attorney General, Cristina M. Correia, Christian A. Fuller, Assistant Attorneys General; Wayne R. Allen, Elizabeth P. Howerton, Shawn M. Story,* for appellees.